2005 UT 59

**R. Michael ANDERSON and Robert H. Anderson, Plaintiffs and Appellants,**

v.

**WILSHIRE INVESTMENTS, L.L.C., Defendant and Appellee.**

No. 20040278.

Supreme Court of Utah.

Sept. 16, 2005.

Ronald Ady, Salt Lake City, for plaintiffs.

Mark F. James, Mark H. Richards, Salt Lake City, for defendant.

DURRANT, Justice:

¶ 1 In this case, we must determine whether an order issued in a summary lien proceeding is final for purposes of appeal. The order from which the appellants, Michael and Robert Anderson, seek to appeal dismissed the portion of their Petition to Nullify a Wrongful Lien ("Petition") that asserted claims pursuant to the Wrongful Lien Act. The court of appeals held that it did not have jurisdiction to hear the Andersons' appeal because the district court's dismissal did not constitute a final order. We granted certiorari to review the court of appeals' decision. Because the Andersons' Petition included additional claims that could not be addressed at the summary lien proceeding, we conclude that the Andersons' appeal was from a non-final order and therefore affirm.

## BACKGROUND

¶ 2 The current dispute arose when Wilshire Investments, L.L.C. ("Wilshire") received a trust deed on property owned by the Andersons as partial security for a substantial commercial loan. The Andersons had signed the trust deed, allegedly in reliance on several representations made by Wilshire with respect to the effect of the deed. After Wilshire denied making those representations, the Andersons filed their Petition seeking to nullify Wilshire's trust deed, claiming that the trust deed constituted a wrongful lien. Specifically, the Andersons sought the following: (1) a declaratory judgment that the lien on the Andersons' property was wrongful, (2) an order quieting title, (3) damages for failure to release the wrongful lien after notice, (4) damages for intentionally filing a wrongful lien, and (5) attorney fees. The Petition also stated, "the Andersons defer pleading their claims for relief by way of complaint, until they have an opportunity to ... amend this pleading." The Andersons anticipated that their amended pleading would include causes of action for "fraud, conversion, intentional misrepresentation, negligent misrepresentation, civil conspiracy, breach of contract, restitution, reformation, equitable subordination, [and] interference with advantageous business relationships." After receiving the Petition, the district court, pursuant to the procedures outlined by statute, see Utah Code Ann. § 38-9-7 (2001), scheduled a summary hearing to assess whether Wilshire's trust deed was, in fact, a

wrongful lien as defined by the Wrongful Lien Act, *id.* §§ 38–9–1 to –7.[1]

¶ 3 At the summary hearing, the district court concluded that Wilshire's trust deed was not a wrongful lien because it was authorized by statute and signed by the Andersons. Although Wilshire was the prevailing party at the summary proceeding, the court denied Wilshire's request for attorney fees, but stated that it "anticipate[d] further litigation in the matter" and reserved the right to consider additional attorney fee requests at the end of the litigation.

¶ 4 After the district court's oral ruling, Wilshire filed a proposed order. The Andersons promptly objected to the proposed order and moved for a new trial, arguing that Wilshire's proposed order did not accurately reflect the district court's conclusions because it would effectively dismiss the entire Petition. The district court denied the Andersons' motions and issued a written order. In its order, the district court reaffirmed its earlier determination that Wilshire's trust deed was not a wrongful lien as defined by the Wrongful Lien Act and therefore dismissed the "portion of [the Andersons'] Petition that asserts a wrongful lien under [the Wrongful Lien Act]." In addition, the court reiterated its denial of Wilshire's request for attorney fees, but "reserved [the issue] for consideration by the Court at a later date should this case continue." The Andersons again objected to the order, asserting that it effectively dismissed the entire Petition because a wrongful lien, as defined by the Wrongful Lien Act, was an essential element of each of their claims. However, the district court ruled that its order "fairly reflect[ed] the decision of the Court at the hearing."

¶ 5 Despite the Andersons' representations that they would amend their pleading to include additional claims, and the district court's encouragement at the hearing that they do so, the Andersons did not amend their pleading and instead filed a notice of appeal. The court of appeals determined that the Andersons' appeal was from a nonfinal judgment because the district court had "reserved ruling on the claim for attorney fees." *Anderson v. Wilshire Invs., L.L.C.,* 2004 UT App 19U, ¶ 2, 2004 WL 214260. Therefore, the court of appeals dismissed the Andersons' appeal for lack of jurisdiction. *Id.*

¶ 6 We granted certiorari to review whether the court of appeals erred in holding it lacked jurisdiction to review the Andersons' appeal. Although we conclude that the court of appeals erred in finding that the attorney fees issue remains pending, we affirm on other grounds. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(a) (2002).

## STANDARD OF REVIEW

¶ 7 "On certiorari, we review the court of appeals' decision for correctness." *State v. Garner,* 2005 UT 6, ¶ 7, 106 P.3d 729 (internal quotation omitted). Whether a district court's judgment is final is a question of law, and we therefore grant no deference to the court of appeals. *Miller v. USAA Cas. Ins. Co.,* 2002 UT 6, ¶ 18, 44 P.3d 663.

## ANALYSIS

¶ 8 The outcome of the current dispute hinges on the answer to one question: did the district court's order finally dispose of the controversy between the parties? For the reasons detailed below, we conclude that it did not.

¶ 9 As a general rule, an appellate court lacks jurisdiction over an appeal that is not taken from a final order or judgment. Utah R.App. P. 3(a).[2] "For an order to

---

1. The Wrongful Lien Act restricts its definition of a wrongful lien to any document that purports to encumber an owner's interest in real property when, at the time it was recorded, the document was not

   (a) expressly authorized by this chapter or another state or federal statute;

   (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or

   (c) signed by or authorized pursuant to a document signed by the owner of the real property.

Utah Code Ann. § 38–9–1(6) (2001).

2. An order that is not final may nevertheless be appealed if (1) the district court properly certifies it for appeal, Utah R. Civ. P. 54(b); (2) an appellate court grants permission for an interlocutory appeal, Utah R.App. P. 5; or (3) the action is

constitute a final judgment, it must end the controversy between the litigants." *Loffredo v. Holt*, 2001 UT 97, ¶ 12, 37 P.3d 1070 (citing *Kennedy v. New Era Indus., Inc.*, 600 P.2d 534, 536 (Utah 1979)). In other words, to be a final order, the court's decision must "dispose of the subject-matter of the litigation on the merits of the case." *Kennedy*, 600 P.2d at 536 (internal quotation omitted); *see also Salt Lake City Corp. v. Layton*, 600 P.2d 538, 539 (Utah 1979) ("[A] judgment which disposes of fewer than all of the causes of action alleged in the plaintiff's complaint is not a final judgment. . . ."). The principal rationale for limiting the right to appeal in this way is to "promote[ ] judicial economy by preventing piecemeal appeals in the same litigation to this Court." *Kennedy*, 600 P.2d at 535.

¶ 10 The question of whether the district court's order ended the controversy between the parties appears, at first blush, to be a simple one. However, the answer to this question is complicated by the unique nature of the summary lien proceeding from which the Andersons appealed and the opaque statutory language that establishes such proceedings. The Andersons appealed from an order that was issued in a summary proceeding designed only to determine whether a lien is wrongful as defined by the Wrongful Lien Act. *See* Utah Code Ann. § 38–9–7 (2001) (granting a record interest holder of real property a statutory right to petition for expedited relief from a wrongful lien). The summary proceeding contemplated by this statute is limited in a number of respects. For example, the Wrongful Lien Act defines "wrongful lien" narrowly. Consequently, a lien may be summarily nullified through a summary lien proceeding only if, at the time the lien was recorded or filed, it was not

(a) expressly authorized by [the Wrongful Lien Act] or another state or federal statute;

(b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or

(c) signed by or authorized pursuant to a document signed by the owner of the real property.

*Id.* § 38–9–1(6). Further, at the summary proceeding, the court may only "determine whether or not a document is a wrongful lien" and "shall not determine any other property or legal rights of the parties nor restrict other legal remedies of any party." *Id.* § 38–9–7(4). If a court determines at the summary lien proceeding that the challenged lien is wrongful, "the court shall issue an order declaring the wrongful lien void ab initio, releasing the property from the lien, and awarding costs and reasonable attorney's fees." *Id.* § 38–9–7(5)(a). If a court determines that a challenged lien is valid, it "shall dismiss the petition and may award costs and reasonable attorney's fees to the lien claimant." *Id.* Damages may not be awarded at the summary proceeding, but must await determination at a full hearing. *Id.* § 38–9–7(7).

¶ 11 It is unclear from the statutory language of section 38–9–7 what role the petition to nullify, and for that matter the summary proceeding itself, plays in a larger civil action. Also, where a petition to nullify contains claims that are unresolvable at the summary lien proceeding, it is unclear to what extent those claims survive a summary determination that the challenged lien is not wrongful.

¶ 12 In this case, the Andersons' Petition was not limited to a request that the district court summarily nullify a wrongful lien. The Petition also included requests for attorney fees and for an order quieting title.

¶ 13 Therefore, in addressing the finality of the district court's order, we must first determine whether the Andersons' requests for an order quieting title and for attorney fees were properly before the district court. We

governed by a statute in which the legislature has granted the right to appeal from a non-final order. *Loffredo v. Holt*, 2001 UT 97, ¶ 15, 37 P.3d 1070. In this case, the order from which the Andersons appealed was not certified by the district court, nor have the Andersons gained permission to pursue an interlocutory appeal.

Additionally, the Andersons have not directed us to any language in the Wrongful Lien Act that explicitly or implicitly grants parties the right to appeal from a non-final order. We therefore limit our analysis to the question of whether the district court's order was final for purposes of appeal.

must then decide whether those issues were disposed of by the district court's order.

## I. A PETITION TO NULLIFY MAY INCLUDE ADDITIONAL CLAIMS

█ ¶ 14 It is not clear from the language in Utah Code section 38–9–7 (2001) whether the legislature intended a petition to nullify to act as a motion for an expedited proceeding addressing one issue within the context of a larger civil action, like a motion for partial summary judgment on the wrongful lien issue, or as a separate and independent action designed to resolve the wrongful lien claim.[3] However, the former interpretation is more consistent with the structure of the statute, which does not explicitly prohibit the petition from containing additional claims and, in fact, anticipates that the petition may include claims in addition to those subject to expedition. The statute provides that "[i]f the petition contains a claim for damages, the damage proceedings may not be expedited under this section." Utah Code Ann. § 38–9–7(7). The statute further provides that, at the summary proceeding, the court "shall not determine any other property or legal rights of the parties nor restrict other legal remedies of any party." *Id.* § 38–9–7(4). It is clear that the legislature recognized that a party may have claims beyond a request to nullify a wrongful lien. Nothing in the statute prohibits those claims from being initially pled in a petition to nullify. This suggests that the outcome of the summary lien proceeding does not necessarily end the controversy between the parties.

¶ 15 This interpretation is supported by the absence of any language in section 38–9–7 that indicates, explicitly or implicitly, that the summary lien proceeding is intended to be a separate, immediately appealable, proceeding. *See id.* § 38–9–7. For certain other expedited proceedings, the legislature has explicitly set forth the method for appealing the decisions made therein. *See, e.g., id.* § 78–36–11 (2002) (providing that, in a forcible entry and detainer action, "either party may, within ten days, appeal from a judg-

ment rendered"); *id.* § 31A–27–302(3) (2003) (providing that, in an action to rehabilitate an insurer, "[t]he judgment of the court granting or denying the petition may be appealed under the Utah Rules of Civil Procedure.... The Supreme Court shall give expeditious review of appeals made under this Subsection"); *id.* § 20A–4–406 (providing that, in an election contest, "[e]ither party may appeal the district court's judgment to the Supreme Court as in other cases of appeal from the district court"). We have been referred to no language in section 38–9–7, and we can find none, that suggests the legislature intended that a summary lien proceeding be treated as a separate and independent proceeding that is immediately appealable despite the existence of additional pending claims. If the legislature had intended such a departure from the normal rules of appellate procedure, it would have evidenced its intent explicitly.

¶ 16 We also note, that an interpretation that requires parties to litigate all of their claims before they can appeal serves important policy considerations. *See Kennedy v. New Era Indus., Inc.,* 600 P.2d 534, 535 (Utah 1979). Limiting a party to one trial of all of the party's claims that arise from the same transaction or occurrence not only "promotes judicial economy by preventing piecemeal appeals," but also reduces expense to the litigants and judiciary and "prevents the interminable protraction of lawsuits." *Id.*

¶ 17 Consequently, in this case, even though at the summary proceeding the district court could only determine whether Wilshire's lien was wrongful as defined by the Wrongful Lien Act, all of the issues raised in the Andersons' Petition were before the court and remain pending until the court disposes of those issues.

## II. THE DISTRICT COURT'S ORDER WAS NOT FINAL

█ ¶ 18 Having determined that all of the claims raised in the Andersons' Petition were properly before the district court, we now

3. By definition, a petition may be used either to request specific types of relief or as the initial

pleading in a lawsuit. *See* Black's Law Dictionary 1165 (7th ed.1999).

turn to the issue of whether the district court's order disposed of all of those claims. We conclude that, even if the district court intended to dismiss each of the claims before it, it did not have authority to do so at the summary lien proceeding.

¶ 19 To dispose of the subject matter of the litigation, the court must resolve "all claims, including requests for attorney fees," that are pending before the court. *Loffredo v. Holt*, 2001 UT 97, ¶ 14, 37 P.3d 1070; *see also Bradbury v. Valencia*, 2000 UT 50, ¶ 10, 5 P.3d 649 ("To be final, the trial court's order ... must dispose of all ... claims to an action."). Despite this seemingly categorical rule, a court does not necessarily need to specifically address every claim brought by a party before the party is allowed to appeal. *See Bowles v. State*, 652 P.2d 1345, 1346 (Utah 1982) ("The test of finality ... is not necessarily whether the whole matter involved in the action is concluded ...." (internal quotation omitted)). Instead, a court's order ends a controversy if the court's determination of one or more issues effectively prevents a party from going forward with other claims. *See id.* ("The general rule [is] whether the *effect* of the ruling is to finally resolve the issues."); *Barton v. Utah Transit Auth.*, 872 P.2d 1036, 1038 (Utah 1994) ("[W]e look not only to the language, but also to the effect of a dismissal order."). In other words, where a party has multiple claims arising from the same facts, the determination of one claim does not result in a final judgment unless the disposal of that claim precludes the party from proceeding on the other claims.

¶ 20 As mentioned above, the district court has limited authority at a summary lien proceeding. It may decide only whether (1) a document is a wrongful lien as defined by the Wrongful Lien Act, Utah Code Ann. § 38–9–7(4) (2002); and (2) a prevailing party is entitled to attorney fees, *id.* § 38–9–7(5).

¶ 21 Pursuant to its authority, the district court in the present case determined that Wilshire's trust deed was not a wrongful lien

as defined by the Wrongful Lien Act. Following this determination, the court issued its order, which provided, in pertinent part, as follows:

1.   That portion of [the Andersons'] Petition that asserts a wrongful lien under Utah Code Ann. §§ 38–9–1(6), *et seq.* is hereby dismissed;

. . . .

3.   [Wilshire's] request for an award of costs and attorney's fees is denied at this time. The request is reserved for consideration by the Court at a later date should this case continue[.]

¶ 22 Throughout the briefing process, Wilshire has maintained that the language of these provisions left pending the issue of attorney fees and the Andersons' request for an order quieting title.[4] In conducting our analysis of whether these issues remain pending, we will first examine the correctness of the court of appeals' conclusion that the attorney fees issue remains pending. We will then examine whether the request for an order quieting title remains pending.

### A.   The District Court Disposed of the Attorney Fees Issue

¶ 23 At the summary proceeding, both the Andersons and Wilshire made requests for attorney fees, pursuant to Utah Code section 38–9–7(5). According to that section, at a summary lien proceeding, a court *shall* award attorney fees to a petitioner if it finds that a document is a wrongful lien, Utah Code Ann. § 38–9–7(5)(a), and *may* award attorney fees to the lien claimant if it finds that a lien is valid, *id.* § 38–9–7(5)(c).

¶ 24 In this case, the district court concluded that Wilshire's trust deed was not a wrongful lien. As to whether to award attorney fees to Wilshire, the district court "denied [the request for attorney fees] at this time," but stated that "[t]he request is re-

---

4.   At oral argument before this court, Wilshire changed its position and asserted that the district court's order was final for purposes of appeal. That notwithstanding, " 'acquiescence of the par-

ties is insufficient to confer jurisdiction on the court.' " *Bradbury*, 2000 UT 50 at ¶ 8, 5 P.3d 649 (quoting *A.J. Mackay Co. v. Okland Constr. Co.*, 817 P.2d 323, 325 (Utah 1991)).

served for consideration by the Court at a later date should this case continue."

¶ 25 Wilshire argues that, by reserving the attorney fees request "for consideration ... at a later date," the district court left the attorney fees issue pending. The Andersons respond that the district court disposed of Wilshire's request by stating that it was "denied at this time" and that the district court's statement that it would consider awarding attorney fees "at a later date, should this case continue," merely demonstrated the court's willingness to consider awarding attorney fees if the Andersons amended their pleadings to raise additional claims.

¶ 26 The court of appeals agreed with Wilshire and held that the attorney fees issue remains pending. In reaching its conclusion, the court of appeals applied this court's holding in *ProMax Development Corp. v. Raile*, 2000 UT 4, ¶ 15, 998 P.2d 254, that "a trial court must determine the amount of attorney fees awardable to a party before the judgment becomes final for the purposes of an appeal."

¶ 27 However, we conclude that the court of appeals' reliance on *ProMax* was misplaced. In the case before us, Wilshire's only request for attorney fees was based on those awardable under section 38–9–7(5) at the summary lien proceeding. That request was denied. The district court reserved the right to consider awarding attorney fees only if such requests were made at further proceedings. This reservation, contingent upon the occurrence of an uncertain event, was insufficient to leave the attorney fees issue pending.

¶ 28 The *ProMax* rule is inapplicable to cases where, as in this case, a court makes an outright denial of a request for attorney fees. For the attorney fees issue to be pending, there must be something left for the district court to decide. *Cf. State v. Mullins*, 2005 UT 43, ¶ 10, 116 P.3d 374 (holding that a motion to withdraw a guilty plea was not pending because nothing was left for the court to decide). As a result, we hold that the court of appeals erred when it determined that the attorney fees issue remains pending before the district court.

### B.  The Quiet Title Claim Remains Pending

¶ 29 Wilshire argues that the Andersons' request for an order quieting title remains pending for two reasons. First, the district court did not intend to dispose of this issue. In support of this argument, Wilshire directs us to language in the district court's order, where the district court states that it is dismissing only "that *portion* of the Petition that asserts a wrongful lien." (Emphasis added.). Wilshire further relies on the district court's statement that the dismissal "does not deal with the issue of quiet title."

¶ 30 Second, Wilshire argues that, even if the district court intended to dispose of the quiet title claim, it did not have the authority to do so at the summary lien proceeding because the Wrongful Lien Act specifically prohibits district courts from determining any "property or legal rights of the parties" other than whether a lien is wrongful. *See* Utah Code Ann. § 38–9–7(4).

¶ 31 We conclude that the district court's intent is irrelevant as to the quiet title claim because the court did not have the authority to dispose, whether directly or indirectly, of that claim at the summary lien proceeding. As noted above, a court may dispose of an issue without directly addressing it if the court's determination of one or more issues effectively prevents a party from moving forward with other claims. *See Bowles*, 652 P.2d at 1346; *Barton*, 872 P.2d at 1038. In this case, at the time the district court issued its order, it had authority only to decide whether Wilshire's trust deed was a wrongful lien as defined by the Wrongful Lien Act. Nevertheless, we recognize that the district court could have effectively disposed of the Andersons' additional claims that were predicated on a finding of a wrongful lien.

¶ 32 The Andersons argue that the district court effectively disposed of their quiet title claim because a wrongful lien is an essential element of that claim. We disagree.

¶ 33 The district court's determination that Wilshire's trust deed was not a wrongful lien, as defined by the Wrongful Lien Act, did not necessarily dispose of the Andersons' quiet title claim because the presence of a statuto-

ry wrongful lien is not an essential element of a quiet title claim. A quiet title claim is brought by a party to determine that party's interest in real or personal property when another party has made an adverse claim to that property. Utah Code Ann. § 78–40–1 (2002). The party may assail the adverse claim "for any ... legal reason" that would render the claim invalid and is not limited to those grounds available under the Wrongful Lien Act. *Doyle v. W. Temple Terrace Co.*, 43 Utah 277, 135 P. 103, 105 (1913); *see also* Utah Code Ann. § 38–9–1(6).

¶ 34 Thus, the district court's dismissal of the portion of the Andersons' Petition that asserts a wrongful lien did not dispose of the quiet title action by determining the Andersons' rights to the property, nor could it have, because such a claim may not be addressed in a summary proceeding. Instead, the partial dismissal was merely a determination that Wilshire's trust deed was not a wrongful lien as defined by the Wrongful Lien Act.

¶ 35 Furthermore, the Andersons retained the option of challenging the lien on other grounds at a full hearing. Although a lien may be deemed valid when the analysis is focused exclusively on the three wrongful lien factors contained in the Wrongful Lien Act, and therefore not subject to nullification in a summary proceeding, a petitioner may nevertheless prevail after a full hearing by demonstrating some other basis for invalidating the lien. For example, it may be that the lien was (1) obtained by fraudulent means, (2) executed by a grantor who lacked mental competency, (3) signed under duress or undue influence, or (4) the result of mutual mistake. 9 Thompson on Real Property, § 82.12(a)-(e) (David A. Thomas ed., 2d Thomas ed.1999); *see also Harmston v. Harmston*, 680 P.2d 751, 752 n. 1 (Utah 1984) (noting that a deed may be set aside in equity "where the grantor has been induced by fraud or undue influence").

¶ 36 Accordingly, we conclude that the district court's summary determination that the lien was not wrongful under the Wrongful Lien Act does not qualify as a final order because it fails to completely resolve all pending claims.

## CONCLUSION

¶ 37 We conclude that the district court's order was not final for purposes of appeal. By the plain language of the order, the district court disposed of the Andersons' request for summary nullification of Wilshire's trust deed and Wilshire's request for attorney fees. The district court did not, however, dispose of the quiet title claim. The district court did not have authority to dispose of such a claim directly or by implication at the summary lien proceeding as a wrongful lien is not an essential element of such a claim. Because the district court did not fully dispose of all claims before it, the Andersons' appeal arose from a non-final judgment. We therefore affirm the court of appeals' dismissal and remand for further proceedings consistent with this opinion.

¶ 38 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.